UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  11-80604-Civ–Marra/Johnson

SHERONE C. JOHNSON,

       Plaintiff,

vs.

CREDIT PROTECTION
ASSOCIATION, L.P.,

       Defendant.
_____/

### DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT
### AND INCORPORATED MEMORANDUM OF LAW

Defendant, CREDIT PROTECTION ASSOCIATION, LP ("CPA"), by and through its attorney, Barbara Fernandez of Hinshaw & Culbertson LLP, hereby moves for final summary judgment pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7.5, and states as follows:

### INTRODUCTION

CPA called the plaintiff, Sherone Johnson, seeking to collect his outstanding balance in the amount of $239.53 for services Comcast provided to the plaintiff.  Comcast forwarded the account to CPA for collection.  The plaintiff does not dispute that he owes this debt.  Instead, he refused to pay and filed the instant lawsuit alleging that CPA called his cell phone without his permission in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*. ("TCPA") and that CPA violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA") by "threaten[ing] to take legal action which could not legally be taken in attempting

to collect the alleged debt due to its failure to first register with the Florida Office of Financial Regulation as required by the Florida Consumer Practices Act Section 559.553."

The crux of plaintiff's TCPA claim is that CPA did not have the plaintiff's consent to call his cell phone. DE 1, ¶ 24. From the onset of this case, CPA has informed the plaintiff that CPA had consent to contact the plaintiff on his cell phone because the plaintiff provided this telephone number to Comcast, his creditor. CPA produced undisputed evidence of this fact on October 13, 2011 – the work order signed by the plaintiff and containing his cell phone number, demonstrating conclusively that he provided this number to Comcast. Plaintiff later testified to that exact fact – that he gave the cell phone number at issue to Comcast. Yet, it is now May 2012, and the plaintiff and his attorney continue to unreasonably prosecute these claims. The law is clear – an individual who provides "a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10.

The plaintiff also curiously claims that CPA was not properly registered as required by the Florida Consumer Practices Act ("FCCPA"), and it therefore violated the FDCPA. CPA informed the plaintiff that this claim similarly lacks any basis early in this litigation. On October 13, 2011, CPA produced undisputed proof of its registration – a license current from May 30, 2003 to December 31, 2011 (and still current). Notwithstanding, as this Court is well aware, the plaintiff insisted upon deposing not only one but a second CPA representative on the issue. Both testified that CPA has been properly registered prior to the time period relevant to this lawsuit, and this continues to be true today.

The law on this issue is equally clear - under the "least sophisticated consumer" standard, a hypertechnical violation must be <u>materially</u> false or misleading to violate 1692e. *Lane v. Fein, Such, & Crane,* 767 F. Supp. 2d 384, 388-89 (E.D. NY 2011), citing *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009); *Wayee v. Recovery's Unlimited, Inc.*, 2009 WL 3334634, at *1-2 (S.D. NY Oct. 15, 2009)(dismissing plaintiff's 1692e(5), e(9), and e(10) claims under 12(b)(6) standard and holding that violation of technical licensing requirement specific to city or state results in no identifiable harm to debtor and is not actionable under FDCPA).

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. The plaintiff provided his cellular phone number to Comcast on May 9, 2009. Documents produced by Defendant on October 13, 2011, attached hereto as Exhibit 1, at CPA000073; Plaintiff's deposition, attached hereto as Exhibit 2, at 21:19-22:24.

2. The plaintiff incurred an outstanding balance to Comcast in the amount of $239.53 for cable services Comcast provided to the plaintiff. Ex. 1 at CPA000001; Ex. 2 at 26:13-26:19.

3. The plaintiff refused to pay this amount, and Comcast forwarded the plaintiff's account information, including the cell phone number provided by plaintiff, to CPA for collection on or around February 19, 2010. Ex. 1 at CPA000001; Ex. 2 at 26:13-26:19.

4. On May 13, 2010, CPA called the plaintiff at XXX-XXX-8550 and left a voice message. Plaintiff's complaint, Court docket entry ("DE") #1, at ¶ 10; Ex. 1 at CPA000002.

5. On May 20, 2010, CPA called the plaintiff XXX-XXX-8550 and left a voice message. DE #1, at ¶ 10; Ex. 1 at CPA000002.

6. CPA placed only two calls to the plaintiff, on May 13, 2010 and May 20, 2010. Ex. 1 at CPA000002; Ex. 2 at 15:14-15:16.

7. On October 13, 2011, CPA produced a copy of the Comcast Work Order/Customer Agreement with the plaintiff. Ex. 1 at CPA000073.

8. Plaintiff admits that he gave his cellular phone number, XXX-XXX-8550 to Comcast at the time he requested service. Ex. 2 at 21:25 – 22:14.

9. This work order includes the plaintiff's cell phone number at issue in this case, XXX-XXX-8550, in two places. Ex. 1 at CPA000073; Ex. 2 at 23:23-24:9.

10. The plaintiff signed this work order on May 9, 2009. Ex. 1 at CPA000073; Ex. 2 at 19:16-20:20.

11. CPA was registered in 2010 as required by the FCCPA, and possessed the license issued by the Florida Office of Financial Regulation. Ex. 1 at CPA000014.

12. On October 13, 2011, CPA produced a copy of its license issued by the Florida Office of Financial Regulation. Ex. 1 at CPA000014.

13. This license states "Credit Protecton Association, LP"[1] rather than "Credit Protection Association, LP." Ex. 1 at CPA000014.

14. CPA submitted its request for the license with its name properly spelled, but the Florida Office of Financial Regulation ("Florida OFR") made a typographical error and left a letter out of the word "Protection." Deposition of CPA representative Judi Chmielowiec, attached hereto as Exhibit 3, at 7:7-7:18.

15. CPA notified the Florida OFR, the Office informed CPA could correct the error made by the Office itself, and CPA corrected the error. Ex. 3 at 8:5-8:24.

---

[1] The "i" in the word "Protection" was left out.

16. CPA produced further proof of its proper licensing during the year 2010. Ex. 3 at Exhibit E.

17. The plaintiff did not return CPA's calls. Ex. 2 at 14:16-14:24.

18. The plaintiff did not know if CPA was or was not licensed in the state of Florida when it placed the two calls at issue, and he did not try to find out. Ex. 2 at 15:3-15:10.

19. Rather, he contacted his attorney to determine whether any basis existed for a lawsuit. Ex. 2 at 14:25-15:2.

20. Plaintiff obviously does not have actual damages in this case. Ex. 2 at 15:25-16:3.

## ARGUMENT

**A.   Standard of Review.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *see Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285

(11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In meeting this burden, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus*. Nevertheless, the nonmovant need not be given the benefit of every inference, but only of every reasonable inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir.1988). When a party's response consists of "nothing more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993); *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981), cert denied 456 U.S. 1010 (1982). Based upon these principles, CPA is entitled to final summary judgment against the plaintiff.

**B.  CPA did not violate the TCPA or FDCPA because it is undisputed that the plaintiff provided prior express consent to be contacted on his cell phone.**

Plaintiff claims that CPA violated the TCPA by placing automated calls to his cell phone. DE #1 at ¶ 24. Plaintiff also claims that "the same conduct" violates Section 1692d of the FDCPA. DE #1 at ¶ 21.[2] The basis for both claims fails because the plaintiff consented to CPA placing calls to his cell phone.

---

[2] Section 1692d prohibits a debt collector from "engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. 1692d. The plaintiff appears to make a habit of using a separate and distinct Act as his basis for a violation of another Act. *See* Section C. *infra.*

Case No. 11-80604-Civ-Marra/Johnson

The TCPA prohibits making automated calls to a number assigned to a cell phone only if such calls are made without the called party's "prior express consent." § 227(b)(1) makes it unlawful for a person:

> (A) to make any call (<u>other than a call made for emergency purposes or made with the prior express consent of the called party</u>) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The prohibition does not apply if the called party consented to receive auto-dialed and prerecorded message calls on his cell phone. The FCC has clarified what constitutes "express consent" as a matter of law under the statute pursuant to its authority to create rules and regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2). The FCC issued a declaratory order which states that:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.
>
> Calls placed by a third party collector on behalf of that creditor [to whom prior express consent was provided] are treated as if the creditor itself placed the call.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10.

In reaching this conclusion, the FCC looked to the legislative history of the TCPA. The House Report on the bill that became § 227 states that "[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone

7

number of such a line to the caller for use in normal business communications." No. 07-232 ¶ 9, citing to House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 17.

The FCC's original rulemaking under the TCPA found that a person who voluntarily releases his phone number to another gives consent to be contacted at the number:

> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

*In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992). This FCC final order is binding on this Court under the Hobbs Act and cannot be challenged by the plaintiff in the District Court. See 28 U.S.C. §2342(1); 47 U.S.C. §402(a); *CE Design, Ltd. V. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010). This Court is required to apply the FCC's Orders to the facts. *CE Design*, 606 F.3d at 446, n. 3.

Under the FCC ruling, when an individual provides his cell phone number to a creditor, he consents to receive auto-dialed calls on his cell phone. Debt collectors acting on behalf of the creditor may call that number using an automatic telephone dialing system or prerecorded message without violating the TCPA. At the time the plaintiff set up his service, he provided Comcast his cell number. Statement of Uncontroverted Material Facts ("SMF") ¶ 1 . The plaintiff does not (and can not) dispute this fact. SMF ¶ 1. The cell number was included on the work order that the plaintiff signed. SMF ¶¶ 8, 9. The plaintiff gave Comcast his cell number, which was listed (twice) as his phone number on the work order. SMF ¶ 8. The plaintiff signed this work order. SMF ¶ 9. Comcast gave the number to CPA when it forwarded the plaintiff's account for CPA for collection. SMF ¶ 3. The number CPA called is the same number the

plaintiff provided to Comcast.  SMF ¶¶ 4, 5.  CPA's calls therefore complied with the TCPA, § 227(b)(1)(A)(iii) because the plaintiff consented to receive the calls as promulgated by the FCC.

The FCC ruling explains in no uncertain terms that by providing his cell number to Comcast, the creditor, plaintiff provided express consent allowing calls to be made on behalf of Comcast on his cell phone.  The FCC ruling is unqualified in its scope.  The FCC has found "that autodialed and prerecorded message **calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party**, [and] we clarify that **such calls are permissible**."   *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10 (emphasis added).  The FCC further explained that "**calls to wireless numbers that are provided by the called party to a creditor** in connection with an existing debt **are permissible** as calls made with the 'prior express consent' of the called party . . . . *Id*. at 568, ¶ 17 (emphasis added).

These FCC pronouncements make clear that a company like CPA can lawfully call a cell number for a debtor if the debtor provided the number to the creditor.  That is precisely what occurred here.  The FCC could have qualified its rulings, provided limits or conditions on the scope of the express consent, or mandated a method by which to revoke the consent.  It did not.  This Court cannot limit or modify the express consent given.  District Courts are not the proper forum in which to challenge the content and scope of an FCC order.  *CE Design*, 606 F.3d at 450.  District Courts are instead bound to apply it to the facts of the case. *Id*. at 466, n. 3.

The plaintiff's TCPA claim suffers from the same shortcomings that doomed the TCPA claims where plaintiff's received calls from debt collectors in *Starkey v. Firstsource Advantage, LLC,* 2010 WL 2541756, *3 (W.D.N.Y.  2010), and *Greene v. DirecTV, Inc.*, 2010 WL 4628734,

9

\*3 (N.D. Ill. 2010). In *Starkey*, just as here, the debtor gave her cell phone number to her creditor, Adelphia, when she opened her cable television account, and the auto-dialed collection calls that Adelphia's debt collector made to that number complied with the TCPA as a matter of law. *Id.*, *Accord Cunningham v. Credit Management, L.P.,* 2010 WL 3791104, \*5 (N.D. Tex. 2010)(holding that by providing number to Time Warner cable company, the plaintiff consented to receiving calls on that phone number, and entering judgment on TCPA claim); *see also Cavero v. Franklin Collection Srvc.*, 2012 WL 279448, at \*3-4 (S.D. Fla. Jan. 31 2012)(where plaintiff "does not dispute that he provided AT&T with his cell phone number, XXX-XXX-7615, as the number at which he could be reached," this Court found no genuine dispute that plaintiff provided consent under the TCPA and granted summary judgment in favor of defendant debt collector).

In *Greene,* the plaintiff placed a fraud alert message in her credit reports which stated that she was the victim of identity theft and that potential creditors should verify her identity by calling her cell phone number before they opened credit using her personal information.  A third party contacted DirecTV about opening a satellite television account using the plaintiff's Social Security number. When DirecTV pulled the plaintiff's credit report, it received her fraud alert. DirecTV's vendor then called the plaintiff's cell phone and played a prerecorded message asking whether she had ordered satellite television service from DirecTV. In response, the plaintiff filed suit, alleging that the prerecorded message call violated the TCPA because it was made without her consent. The court entered summary judgment for defendants. The plaintiff had consented to be contacted by potential creditors on her cell phone number when she voluntarily released her number to potential creditors through the fraud alert message she placed in her credit reports.

Similarly, in this case, plaintiff's TCPA claim fails as because he provided express consent to receive CPA's calls by providing his number to his creditor, Comcast at the time of the transaction in question. This express consent is by operation of law, as provided by the FCC. Because plaintiff provided his number to Comcast, he consented to receive the calls that CPA made in an effort to retrieve his equipment, and judgment on both plaintiff's TCPA and Section 1692d FDCPA claims should be entered in CPA's favor.

C.  **CPA did not violate the Section 1692e(5) of the FDCPA because it was properly registered as required by the FCCPA.**

The plaintiff claims that CPA:

> threatened to take legal action which could not legally be taken in attempting to collect the alleged debt due to its failure to first register with he Florida Office of Financial Regulation as required by the Florida Consumer Practices Act Section 559.553, in violation of 15 U.S.C. 1692e(5).

DE #1 at ¶ 20. Section 1692e(5) prohibits threatening "to take an action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. §1692e(5). Section 559.553 of the FCCPA requires consumer collection agencies to be registered with the state of Florida and to renew this registration on a yearly basis. §559.553(1)-(2). Leaving aside the point that plaintiff is grasping at straws by bringing this curious claim, plaintiff must show that CPA was not registered in 2010 to withstand summary judgment. *Celotex Corp.*, 477 U.S. at 323 (where non-moving party fails to prove essential element of its case for which it has burden of proof at trial, summary judgment is warranted). The plaintiff cannot do so because the facts do not support his theory.

1.  **CPA was registered with the Florida Office of Financial Regulation in 2010.**

The plaintiff's theory is squarely refuted by the evidence put forth by CPA – proof that it was licensed in 2010. SMF ¶ 11. Finally acknowledging this fact <u>1 year</u> into the case, the plaintiff attempts to shift focus to the Florida Office of Financial Regulation's typographical error in leaving out the letter "i" in CPA's name. SMF ¶ 12. The contention that CPA

somehow violated the FDCPA because of the Florida Office of Financial Regulation's error lacks any merit for at least three reasons: (1) Even assuming this claim has any merit (which it does not), CPA did not cause this error; and (2) CPA caught the error, notified the Office, and followed the Office's instructions on how it could correct the error itself; and (3) CPA has produced further additional undisputed proof of its proper licensing during the relevant period – correspondence from the Office regarding CPA's license renewal for the year 2010 and confirmation that CPA had submitted payment for the 2010 license renewal.  SMF ¶¶ 14 15. *Zenith*., 475 U.S. at 587 ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'"), quoting *First Nat'l Bank of Ariz*, 391 U.S. at 289.  The fact is that CPA was at all times licensed.  There is no other entity named Credit Protecton Association, LP.  It clearly is a typographical error.  That plaintiff continues this prosecute this claim and has forced CPA to file the instant motion for summary judgment is improper and a waste of judicial resources.

> 2. **Even if CPA was not licensed in 2010 (which it was), such hypertechnical error would not rise to the level of an FDCPA violation because it is immaterial.**

Pursuant to the "least sophisticated consumer" standard, a statement must be <u>materially</u> false or misleading to violate Section 1692e. *Lane v. Fein, Such, & Crane,* 767 F. Supp. 2d 384, 388-89 (E.D. NY 2011), citing *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)("Materiality is an ordinary element of any federal claim based on a false or misleading statement.  We do not see any reason why materiality should not equally be required in an action based on § 1692e."); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir.2009)(applying a materiality standard to a Section 1692e claim that was based on alleged misstatements in legal pleadings).  Even if a statement is technically "false," if it would not

14674784v1  0925507

mislead the unsophisticated consumer, it does not violate the FDCPA. *Wahl v. Midland Credit Management, Inc*., 556 F.3d 643, 646 (7th Cir. 2009). *See also Wayee v. Recovery's Unlimited, Inc.*, 2009 WL 3334634, at *1-2 (S.D. NY Oct. 15, 2009)(dismissing plaintiff's 1692e(5), e(9), and e(10) claims and holding that violation of technical requirement specific to city or state results in no identifiable harm to debtor and is not actionable under FDCPA), citing *Nero v. Law Office of Sam Streeter*, 2009 WL 2981973, at *6 ("Courts do not ... recognize technical failures to comply with state or city licensing statutes as actionable under the FDCPA"), citing *Kuhne v. Cohen & Slamowitz, LLP*, 2008 U.S. Dist. LEXIS 17197, at *14-16, 2008 WL 608607 (S.D.N.Y. Mar. 5, 2008); *Lindbergh v. Transworld Sys., Inc*., 846 F.Supp. 175, 180-81 (D. Conn. 1994)(permitting claims based on such technical deficiencies to go forward would reflect "a false, narrow, and overly mechanical reading of the FDCPA").

Here, the plaintiff received two voice messages from CPA which clearly and conspicuously provided CPA's contact information and purpose for calling. SMF ¶¶ 4, 5. The plaintiff did not return CPA's calls. SMF ¶ 16. The plaintiff did not know if CPA was or was not licensed in the state of Florida, and he did not try to find out. SMF ¶ 17. Rather, he contacted his attorney to determine whether any basis existed for a lawsuit. SMF ¶ 18. Therefore, whether or not CPA was not properly licensed in 2010 (it was), when it placed the two calls at issue, is of no consequence to the plaintiff and did not in any way affect the plaintiff's understanding that he owed the outstanding balance CPA sought to collect. SMF ¶ 3. The plaintiff was not misled by CPA. Such hypertechnical violation brought by the plaintiff's counsel, even if it had any merit, is immaterial and does not rise to a violation of the FDCPA.

## **CONCLUSION**

WHEREFORE, Defendant, CREDIT PROTECTION ASSOCIATION, LP, respectfully requests that this Court enter an order granting summary judgment in favor of Defendant and

14674784v1 0925507

Case No. 11-80604-Civ-Marra/Johnson

against Plaintiff, awarding CPA its attorneys' fees and costs incurred in defending this case, and for such other and further relief as this Court deems proper.

*s/Barbara Fernandez*
Barbara Fernandez
Florida Bar No. 493767
Hinshaw & Culbertson LLP
2525 Ponce de Leon Blvd – Suite 400
Coral Gables, FL   33134-6044
Tel:   305-358-7747
Fax:   305-577-1063
ATTORNEY FOR DEFENDANT, CREDIT PROTECTION ASSOCIATION, LP

14

Case No. 11-80604-Civ-Marra/Johnson

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 16, 2012, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day, in the manner specified above, on all counsel of record identified below.

Donald A. Yarbrough
P.O. Box 11842
Fort Lauderdale, FL  33339
donyarbrough@mindspring.com

                                              *s/Barbara Fernandez*
                                                Barbara Fernandez

14674784v1  0925507