UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80604-CIV-MARRA

SHERONE C. JOHNSON,

Plaintiff,

vs.

CREDIT PROTECTION ASSOCIATION, L.P.,

Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Credit Protection Association, L.P.'s Motion for Summary Judgment (DE 34). The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:

Plaintiff Sherone C. Johnson ("Plaintiff") provided his cellular phone number to Comcast on May 9, 2009. (May 9, 2009 work order, CPA000073, Ex. 1, DE 34-1.) Plaintiff testified that he provided his cellular phone number to Comcast in order that Comcast could perform installation for cable services. (Pl. Dep. at 21-23, DE 34-2.) Plaintiff incurred an outstanding balance to Comcast in the amount of $239.53 for the cable services Comcast provided. (Balance document, CPA000001, Ex. 1, DE 34-1; Pl. Dep. at 26.) Plaintiff did not pay the outstanding balance and Comcast provided Plaintiff's account information and cellular telephone number to

Defendant for collection on or around February 19, 2010. (Id.)

On May 13, 2010, Defendant called Plaintiff's cellular telephone number and left a voice message. (Compl. ¶ 10, DE 1; History File Inquiry, CPA000002, Ex. 1, DE 34-1.) On May 20, 2010, Defendant again called Plaintiff's cellular telephone number and left a voice message. (Id.) Plaintiff did not return the telephone calls. (Pl. Dep. 14.) Plaintiff thought a lawsuit might have been brought against him for a debt and instead called his attorney. (Id. at 32-33.)

On October 13, 2011, Defendant produced a copy of the Comcast work order/customer agreement to Plaintiff. (May 9, 2009 work order.) The work order includes Plaintiff's cellular telephone number in two places. (Id.; Pl. Dep. 23-24.) Plaintiff signed the work order. (May 9, 2009 work order; Pl. Dep. 20.)

As of 2010, the Florida Office of Financial Regulation issued a license to "Credit Protecton [sic] Association LP," not Credit Protection Association, L.P. (Office of Financial Regulation record I, CPA000014, Ex. 1, DE 34-1.) According to Defendant's representative, Defendant submitted its request for a license with its name properly spelled. (Judi Chmielowiec Dep. 7, Ex. 3, DE 34-3.) Defendant has maintained a license in the name of "Credit Protecton [sic] Association LP," since 2004. (July 25, 2011 License Search Results, Ex. 1, DE 41-1; Consumer Collection Agency Registration, Ex. 2, DE 41-2; Office of Financial Regulation record II, Ex. 3, Ex. 41-3.) As of July 25, 2011, after this suit was filed, the Office of Financial Regulation's record still indicated that Defendant's name was "Credit Protecton [sic] Association LP." (July 25, 2011 License Search Results.) At some point, Defendant's representative asked the Florida Office of Financial Regulation to correct the misspelling, but she does not remember when she made that request. (Chmielowiec Dep. 7-9.) Upon renewal,

Defendant contacted the Florida Office of Financial Regulation and asked about how to correct the misspelling and was told that Defendant could make this change online. (Id. at 8.) The parties have submitted documents showing that Defendant submitted a renewal for its license in 2009, in the name of "Credit Protecton [sic] Association LP." (Office of Financial Regulation record II; Florida Office of Financial Regulation records III, Ex. 3, DE 34-3.) Plaintiff did not know if Defendant was or was not licensed in the state of Florida when it placed the two calls at issue, and did not try to find out. (Pl. Dep. 15.)

Plaintiff seeks statutory damages for his claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.. ("TCPA") (Id. at 15-16.)

In moving for summary judgment, Defendant argues (1) it did not violate the FDCPA or TCPA because it is undisputed that Plaintiff provided prior express consent to be contacted on his cellular telephone; (2) it did not violate the FDCPA because it was properly licensed and (3) even it if was not properly licensed in 2010, such error would not rise to the level of a FDCPA violation. In response, Plaintiff claims that because Plaintiff gave specific instructions regarding the use of his cellular telephone number, he did not consent to automatic telephone calls.[1] Finally, Plaintiff contends that Defendant has violated the FDCPA by failing to maintain a license in its own name.

---

[1] On August 13, 2012, the Court granted Defendant's Motion to Amend its Answer to plead prior express consent. Additionally, the Court allowed Plaintiff to conduct discovery to rebut the consent defense and file an amended response to the summary judgment motion. (DE 51.) Plaintiff has now filed a supplemental response (DE 56) and Defendant has filed a reply to the supplemental response (DE 58).

## II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477

4

U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. 242, 249-50.

### III. Discussion

The FDCPA provides in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

15 U.S.C. § 1692d.

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section
> . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e.

The TCPA provides in pertinent part:

> (b) Restrictions on use of telephone equipment
>
> (1) Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service,

specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call

47 U.S.C. § 227.

### A. Prior express consent

With respect to the TCPA, the Federal Communications Commission ("FCC") has issued a declaratory ruling clarifying that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling No. 07-232, 23 F.C.C.R. 559 (Jan 8, 2008).[2] This order states, in part, as follows:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.
> . . .
> Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

Id. at ¶ ¶ 9-10.

With respect to the issue of consent, the FCC has stated the following:

> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

---

[2] The Court defers to the FCC's interpretation of the Act. United States v. Mead Corp., 533 U.S. 218, 229 (2001).

<u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, Report and Order, 7 F.C.C.R. 8752, ¶ 9 (Oct. 16, 1992).

Here, at the time Plaintiff set up his service with Comcast, he provided Comcast with his cellular telephone number. (May 9, 2009 work order; Pl. Dep. at 21-23.)  Comcast then gave this telephone number to Defendant when it forwarded to Defendant Plaintiff's account for collection. (Balance document, CPA000001, Ex. 1; Pl. Dep. at 26.)

These facts are similar to the facts in <u>Cunningham v. Credit Management, L.P.</u>, No. 3:09–cv–1497–G (BF), 2010 WL 3791104 (W.D. Tex. Aug. 30, 2010).  In that case, the plaintiff had an internet services account with Time Warner. <u>Id.</u> at * 5.  It was undisputed that Time Warner had the plaintiff's cellular telephone number in connection with the account. <u>Id.</u>  The Court found no genuine issue of material fact as to consent. <u>Id.</u> at * 4; <u>see</u> <u>also</u> <u>Cavero v. Franklin Collection Svc., Inc.</u>, No. 11–22630–CIV, 2012 WL 279448, at * 3-4 (S.D. Fla. Jan. 31, 2012) (finding no issue of fact as to consent when the plaintiff gave his cellular telephone number to his telephone and internet provider); <u>cf.</u> <u>Starkey v. Firstsource Advantage, LLC</u>, No. 07–CV–662A(Sr), 2010 WL 2541756 (W.D.N.Y Mar. 11, 2010) (finding when the plaintiff activated her account with the cable provider and provided the cable provider with her cellular telephone number, she did not revoke her consent for telephone calls from the cable provider's collection agency under the TCPA when her revocation was not put into writing.)

Nonetheless, Plaintiff contends that he did not consent to the calls; specifically, he argues that that, even though he provided his telephone number to Comcast, he also gave Comcast specific instructions that the use of that number was for the purpose of installation only. (Resp. at 3.)  In so arguing, Plaintiff relies on FCC Declaratory Ruling 07-232 which states, in part, that "the

Commission determined that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary.*" FCC Declaratory Ruling No. 07-232, at ¶ 9 (emphasis added) (internal quotation marks omitted).

The record, however, is devoid of any evidence that Plaintiff provided "instructions to the contrary." Instead, a review of Plaintiff's deposition states that while Plaintiff provided his telephone number to Comcast in order that it could call him regarding the installation of cable services, there is no record evidence that Plaintiff instructed Comcast that the phone number could only be used for that purpose. (Resp. at 3; Pl.'s Statement of Additional Material Facts ¶ 21.) Without an affirmative statement by Plaintiff that he advised Comcast it could only use his phone number for installation purposes, he is not entitled to claim he gave "instructions to the contrary." See FCC Declaratory Ruling No. 07-232, at ¶ 9 n.34 (noting persons who knowingly release their telephone numbers have "in essence requested the contact by providing the caller with their telephone number for use in normal business communications.")

For the foregoing reasons, Defendant is granted summary judgment on the TCPA claim.

B. Registration with the Florida Office of Financial Regulation

Defendant contends that, because it was properly licensed with the Florida Office of Financial Regulation in 2010, it did not violate the FDCPA when it called Plaintiff. Specifically, it did not violate the FDCPA based on the Florida Office of Financial Regulation's typographical error of incorrectly spelling its name as "Credit Protecton Association, LP" as opposed to "Credit Protection Association, LP." Defendant also points out that it asked the Florida Office of Financial Regulation to correct the error. Moreover, Defendant relies upon record evidence to show that it

submitted payment for its 2010 license renewal. Lastly, Defendant argues that, even if it was not licensed in 2010 due to the typographical error, such a technical violation would not rise to a FDCPA violation.

In response, Plaintiff claims that the witness upon whom Defendant relies to show it did not make the spelling error in question is not credible because she testified that she spoke with the Florida Office of Financial Regulation about the misspelling before the lawsuit was filed, but two months after the lawsuit was filed, the license was still misspelled.[3] Plaintiff contends that a misspelling of a license made the record unsearchable.

Here, there is no dispute that Defendant renewed its license for 2010 with the Florida Office of Financial Regulation.[4] (Florida Office of Financial Regulation records III.)  The only issue is whether the typographical error rendered the license ineffective.  The Court finds, as a matter of law, that it does not.  Indeed, there was nothing materially false about the information on file with the Florida Office of Financial Regulation. See Donohoe v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010) (concluding that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f); Hahn v. Triumph Partnerships, LLC, 557 F.3d 755, 758 (7th Cir. 2009) ("a statement cannot mislead unless it is material, so a false but nonmaterial statement is not actionable" under the FDCPA); Wahl v.

---

[3] Plaintiff also argues that to the extent Defendant is asserting a bona fide error defense, that is a jury question and Defendant has failed to present any record evidence that it maintained procedures to avoid the circumstances present in this case.  Defendant, however, does not assert this defense in its motion. Instead, Defendant claims that the misspelling in the license lacks materiality, could not have misled the least sophisticated consumer, and therefore did not violate the FDCPA.

[4] The Court does not rely on Ms. Chmielowiec's testimony to reach its finding.

Midland Credit Management, Inc., 556 F.3d 643, 645 (7th Cir. 2009) (finding no violation of FDCPA when the demand letter miscalculated the amount of principal and interest due, despite correctly stating the amount of the debt, as a "hypertechnical [violation] at best"); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable under § 1692e).  Moreover, the record evidence shows that Plaintiff did not know if Defendant was or was not licensed in the state of Florida when it placed the two calls at issue, and did not try to find out. (Pl. Dep. 15.)   Thus, Plaintiff could not have been misled by this fact.

Based on the following, Defendant's motion for summary judgment on the FDCPA claim is granted.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Credit Protection Association, L.P.'s Motion for Summary Judgment (DE 34) is **GRANTED.**

2) The Court will separately issue judgment for Defendant.

3) The Clerk shall close this case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of November, 2012.

_____
KENNETH A. MARRA
United States District Judge